UNITED STATES DISTRICT COURT

DISTRICT OF NEW MEXICO

---

KYU J. KELLY,

       Plaintiff,

v.

JOHN E. POTTER, Postmaster
General,

      Defendant.

No. 03-CV-1371 BRB/LAM

---

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS
AND MOTION FOR SUMMARY JUDGMENT

---

Plaintiff Kyu J. Kelly alleges the United States Postal Service ("Postal

Service") unlawfully:  (1) discriminated against her on the basis of disability in

violation of the Americans with Disabilities Act (ADA) of 1990, 42 U.S.C.

§§ 12101-12213, and the Rehabilitation Act of 1973, 29 U.S.C. §§ 701-796;[1]

(2) discriminated against her on the basis of race and national origin in violation

of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2000e-17; and

---

[1] The court summarily dismisses Plaintiff's ADA claim under Fed. R. Civ.
P. 12(b)(6).  Title I of the ADA – the title governing employment discrimination –
only applies to private and state employers.  See 42 U.S.C. § 12111(5).  The court
recognizes, however, that cases under both the ADA and Rehabilitation Act may
be used interchangeably because the latter incorporates the standards of the
former.  See 29 U.S.C. §§ 791(g), 794(d); Woodman v. Runyon, 132 F.3d 1330,
1339 n.8 (10th Cir. 1997).

(3) retaliated against her in violation of Title VII's anti-retaliation provision, id.

§ 2000e-3.  The matter is before the Court on Defendant's (1) Motion to Dismiss

and/or Partial Summary Judgment (Docket No. 26), and (2) Motion for Summary

Judgment (Docket No. 32).[2]

I.

Plaintiff, a native of Korea, works for the Postal Service in Las Cruces,

New Mexico.[3]  In the spring of 2000, the Postal Service announced the opening of

a "general clerk" position.  Plaintiff successfully bid on the general clerk

position.  She passed the required "typing test" and otherwise met the medical

qualifications for the job.  Specifically, a Department of Labor physician cleared

Plaintiff, in a "duty status report," to perform, among other things, the following

duties of the general clerk position:  (1) "fine manipulation (including

keyboarding)" for eight hours per shift; (2) lifting up to thirty pounds

intermittently for two hours per shift; (3) reaching above her shoulders

intermittently for two hours per shift; and (4) pulling and pushing intermittently

for two hours per shift.  In July 1999, Plaintiff began working as a general clerk.

---

[2] Defendant's unopposed motion for an extension of time to file a reply brief (Docket No. 45) is GRANTED.

[3] The paltry evidence presented with Plaintiff's summary judgment memorandum does not lead to a clear understanding of the background facts giving rise to her lawsuit; for example, significant gaps of unexplained time exist between allegedly improper conduct and proceedings before the Equal Employment Opportunity Commission.

In March 2000, Plaintiff's supervisor assigned her to the "sectional center facility" where she sorted bulk mail.  The assignment required Plaintiff to lift trays between twenty and forty pounds, cut plastic bags and straps with a knife, and transfer the mail from one area of the post office to another.  Plaintiff's supervisor also required her to work on an "ES3 machine."[4]  Plaintiff complained that working on the ES3 machine was outside the medical restrictions identified in her duty status report.  As a result, Plaintiff's supervisor, Rex Leake, did not initially require her to work on the ES3 machine.  Leake, however, subsequently required Plaintiff to work on the ES3 machine after he reviewed Plaintiff's duty status report because the report indicated she could perform the duties of the job.

In June 2000, Plaintiff filed a discrimination complaint with the Equal Employment Opportunity Commission (EEOC).  Plaintiff alleged the Postal Service discriminated against her on the basis of race, national origin, age, and disability when it (1) transferred her work to other employees, (2) isolated her from co-workers, (3) violated her working restrictions, and (4) changed her job description.  The EEOC did not take immediate action on Plaintiff's June 2000 EEO complaint.

---

[4] An ES3 machine is, in effect, a personal computer.  The employee assigned to operate the ES3 machine types a code into the machine.  In turn, the machine produces a bar code that is applied to the mail.  The bar code then permits the Postal Service to process the mail through its automated system.

In July 2000, Plaintiff suffered an off-duty back injury.  The injury required Plaintiff to take five days medical leave.  Plaintiff could not find her time card when she returned from leave.  She nevertheless commenced work without "clocking in."  Plaintiff's supervisor, Leake, observed her working.  Leake approached Plaintiff and ordered her to leave the premises in an angry tone.  The Postal Service permitted Plaintiff to return to work after she provided a statement from her physician clearing her return to work.

In November 2001, the Postal Service abolished Plaintiff's general clerk position and reassigned her to a "distribution clerk" position.  Plaintiff's supervisor said "this is what happens if you don't work with me" when he handed her the reassignment papers.  The distribution clerk position was more physically demanding than the general clerk position.  The distribution clerk position required Plaintiff to distribute boxes for six hours per shift and reach over her shoulders for a "couple of hours."  Plaintiff protested, claiming the distribution and lifting aspects of her job caused her hand and back pain.  Plaintiff nevertheless worked as distribution clerk for the next couple of years.  On August 12, 2003, however, the Postal Service issued Plaintiff a "notice of removal" after she had a verbal and physical confrontation with a supervisor.  The Postal Service terminated Plaintiff on September 6, 2003, but subsequently reinstated her with

backpay and interest after Plaintiff demonstrated the Postal Service terminated her in violation of the terms of her collective bargaining agreement.

On July 11, 2003, Plaintiff again contacted an EEOC counselor and asserted the Postal Service (1) failed to accommodate her disability when it denied her access to a "dark brown chair," (2) retaliated against her for filing the EEO complaint in June 2000, and (3) discriminated against her when it issued her the "notice of removal." The EEOC issued Plaintiff a notice of right to file a formal complaint with respect to her failure to accommodate, retaliation, and discriminatory removal claims. Plaintiff, however, did *not* file any such complaint. The EEOC thereafter held a hearing on Plaintiff's June 2000 discrimination complaint. The administrative law judge found the Postal Service did not discriminate against Plaintiff. The EEOC issued Plaintiff a right to sue letter and this suit followed.

II.

The Postal Service first moves to dismiss Plaintiff's claim that it terminated her in September 2003 on the basis of race, national origin, and disability for lack of subject-matter jurisdiction.[5] See Fed. R. Civ. P. 12(b)(1). The Postal Service

---

[5] Plaintiff's complaint simply alleges the Postal Service discriminated against her on the basis of disability, race, and national origin without specifying *how* the Postal Service engaged in such discrimination. The court construes Plaintiff's complaint as alleging discriminatory discharge and discriminatory

(continued...)

argues the court lacks jurisdiction over Plaintiff's discriminatory discharge claim because she failed to exhaust her administrative remedies with respect to that claim.  Plaintiff responds her discriminatory discharge claim remains viable under the continuing violation doctrine.

The party invoking federal jurisdiction bears the burden of establishing jurisdiction exists.  Steel Co. v. Citizens for Better Env't, 523 U.S. 83, 94-95 (1998); Radil v. Sanborn Western Camps, Inc., 384 F.3d 1220, 1224 (10th Cir. 2004).  Exhaustion of administrative remedies is a jurisdictional prerequisite to filing a Title VII suit.  Sizova v. Nat'l Inst. of Standards and Tech., 282 F.3d 1320, 1325 (10th Cir. 2002); Woodman v. Runyon, 132 F.3d 1330, 1341 (10th Cir. 1997).  Prior to filing suit, a Title VII plaintiff must exhaust her administrative remedies with respect to each discrete incident of alleged discrimination.  Martinez v. Potter, 347 F.3d 1208, 1210 (10th Cir. 2003) (citing National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 110-13 (2002)).  Termination is a "discrete incident" of discrimination.  Martinez, 347 F.3d at 1210.  The exhaustion requirement applies even if the discriminatory incident occurred after the filing of the initial EEO complaint.  Id. at 1210-11.

---

[5](...continued)
reassignment claims.

6

In this case, Plaintiff filed her initial EEO complaint in June 2000.  The
Postal Service terminated Plaintiff in September 2003.  Plaintiff filed a request to
contact an EEOC counselor regarding her alleged discriminatory discharge;
however, she subsequently withdrew that request.  Plaintiff *never* filed a formal
EEO complaint that alleged the Postal Service terminated her on the basis of race,
national origin, or disability.  Accordingly, Plaintiff's discriminatory discharge
claim is unexhausted and the court lacks jurisdiction over that claim.[6]

### III.

The remainder of Plaintiff's complaint alleges the Postal Service
unlawfully:  (1) discriminated against her on the basis of disability in violation of
the Rehabilitation Act; (2) discriminated against her on the basis of race and
national origin in violation of Title VII; and (3) retaliated against her in violation
of Title VII's anti-retaliation provision.  Defendant moved for summary judgment
on each claim.  Summary judgment is appropriate if  no genuine issue as to any
material fact exists and the moving party is entitled to judgment as a matter of
law.  Fed. R. Civ. P. 56(c).

_____

[6] Plaintiff recognizes her discriminatory discharge claim is unexhausted,
but nevertheless argues she can still maintain the claim under the continuing
violation doctrine.  The Tenth Circuit, however, has abrogated the continuing
violation doctrine.  See Martinez, 347 F.3d at 1210-11; Annette v. Univ. of Kan.,
371 F.3d 1233, 1238 (10th Cir. 2004).  The two cases Plaintiff relies upon in
response to Defendant's motion to dismiss are no longer good law.

A.

Count I of Plaintiff's complaint alleges the Postal Service discriminated against her on the basis of disability in violation of the Rehabilitation Act. Section 504(a) of the Rehabilitation Act provides:

> No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity . . . conducted by . . . the United States Postal Service.

29 U.S.C. § 794(a).  To establish a prima facie case of disability discrimination under § 504(a), a plaintiff must demonstrate that (1) she is disabled within the meaning of the Act, (2) she is otherwise qualified for the job, and (3) the Postal Service discriminated against her because of her disability.  Runyon, 132 F.3d at 1338.

A person is disabled under the Rehabilitation Act if:  (1) she has, has a record of having, or is regarded as having a physical or mental impairment; and (2) that impairment substantially limits one or more major life activities.  Welsh v. City of Tulsa, Okla., 977 F.2d 1415, 1417 (10th Cir. 1992).  With respect to the first element, a "physical or mental impairment" means "[a]ny physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting [a] . . . body system . . . or any mental or psychological disorder[.]"  29 C.F.R. § 1630.2(h)(1)-(2).  Any impairment must be "significant," Welsh, 977 F.2d at

8

1417, and its impact must be "permanent" or "long term."  McGeshick v. Principi,

357 F.3d 1146, 1150 (10th Cir. 2004).

With respect to the second element, a person is substantially limited in a

major life activity if she suffers from an impairment that prevents or severely

restricts her from performing activities that are of central importance to most

people's daily lives.  Id.  "Major life activities include such functions as caring

for oneself, performing manual tasks, walking, seeing, hearing, speaking,

breathing, learning, sleeping, sitting, standing, lifting, reaching, and working."

Doyle v. Okla. Heart, Inc., 213 F.3d 492, 497 (10th Cir. 2000); see also 29 C.F.R.

§ 1630.2(i).  The term "substantially limits" means:  (1) "unable to perform a

major life activity that the average person in the general population can perform;"

or (2) significantly restricted as to the condition, manner or duration under which

an individual can perform a particular life activity as compared . . . [to] the

average person in the general population[.]"  29 C.F.R. § 1630.2(j)(1)(i)-(ii).

In this case, Plaintiff fails to carry her summary judgment burden of

showing a genuine issue exists on whether she suffers from a disability under the

Rehabilitation Act.  First, Plaintiff fails to present any evidence demonstrating

she has an impairment, has a record of having an impairment, or that the Postal

Service regarded her has having an impairment.[7]  See 29 C.F.R. § 1630.2(g)(1).

Although Plaintiff argues she "has a disability that substantially limits major life

activities[,]" she never presents any evidence of *what* impairment limits her

ability to perform major life activities.  Plaintiff's "duty status report" indicates

she suffered an injury and that a physician diagnosed her with "something" (the

codes provided for her injury are "729.5, 337.9, 8470, 354").  No evidence or

explanation of the physician's diagnoses, however, exists in the record.[8]  Plaintiff

thus fails to present sufficient evidence – in fact, she presents none – to

demonstrate she suffered from a physical or mental impairment under the

Rehabilitation Act.

Furthermore, even *assuming* Plaintiff suffered from an impairment, she

fails to present sufficient evidence demonstrating her impairment (whatever it

may be) substantially limits one or more major life activities.  See 29 C.F.R.

_____

[7] Plaintiff only argues she has a disability in response to the Postal
Service's motion for summary judgment.  Plaintiff does not argue she has a
"record of an . . . impairment[,]" 29 C.F.R. § 1630.2(g)(2), or that the Postal
Service "regarded [her] as having . . . an impairment."  Id. § 1630.2(g)(3).

[8] The administrative law judge at Plaintiff's EEOC hearing identified
Plaintiff as suffering from carpel tunnel syndrome and degenerative disc disease.
The court, however, agrees with *Plaintiff* that "[t]he findings of the EEOC
hearing officer are not evidence and Plaintiff has a right to a trial de novo in the
United States District Court."  See Castner v. Colorado Springs Cablevision, 979
F.2d 1417, 1422 (10th Cir. 1992) (holding a district court may not give preclusive
effect to the EEOC's discrimination finding). As a result, the administrative law
judge's articulation of Plaintiff's impairment does not help Plaintiff.

10

§ 1630.2(j)(1)(i)-(ii).  Specifically, Plaintiff has not shown she is unable to perform a major life activity that the average person in the general population can perform.  See id. § 1630.2(j)(1)(i).  Plaintiff admitted in her deposition testimony that she can work, stand, and walk.  Plaintiff also testified, and her duty status report confirms, she has the limited ability to lift, squat, and climb stairs.  Plaintiff has not shown, however, that she is "significantly restricted" as to the condition, manner, or duration under which she can perform those activities as compared to the average person in the general population.  See id. § 1630.2(j)(1)(ii); Lusk v. Ryder Integrated Logistics, 238 F.3d 1237, 1241 (10th Cir. 2001) (explaining a plaintiff must produce comparative evidence from which a reasonable inference can be drawn that she is substantially limited in a major life activity).  Indeed, Plaintiff fails to present *any* evidence on (1) the nature or severity of her alleged impairment, (2) the duration or expected duration of her alleged impairment, or (3) the permanent or long term impact of her alleged impairment.  See Doyal v. Okla. Heart, Inc., 213 F.3d 492, 496 (10th Cir. 2000) (listing factors courts consider in determining if a plaintiff was substantially limited in performing major life activities).

Plaintiff fails to present sufficient evidence upon which a reasonable jury could conclude she was disabled under the Rehabilitation Act.  Plaintiff, as a result, cannot establish the first element of her prima facie case under § 504.  The

11

court further finds Plaintiff fails to present sufficient evidence demonstrating the

Postal Service discriminated against her *because of* her disability.  The Postal

Service simply placed Plaintiff in a position for which she bid and that she was

medically qualified to perform.[9]  Plaintiff, therefore, cannot establish a prima

facie case of disability discrimination under the Rehabilitation Act.

B.

Counts II and III of Plaintiff's complaint allege the Postal Service

unlawfully discriminated against her on the basis of  race and national origin.

Title VII prohibits "discriminat[ion] against any individual with respect to his

compensation, terms, conditions, or privileges of employment, because of such

individual's race . . . or national origin[.]"  42 U.S.C. § 2000e-2(a)(1).  A Title

VII plaintiff may prove discrimination with either direct or indirect evidence.

Amro v. Boeing Co., 232 F.3d 790, 796 (10th Cir. 2000).  If the plaintiff lacks

direct evidence of discrimination, she must proceed under the familiar

McDonnell-Douglas burden-shifting framework.  Id.

---

[9] Plaintiff briefly claims she requested an accommodation for her alleged
impairment.  Plaintiff's complaint does not allege the Postal Service failed to
reasonably accommodate her and she does not argue she could have performed the
essential functions of her positions with a reasonable accommodation.  To the
extent Plaintiff is attempting to amend her complaint to include a reasonable
accommodation claim, see Martinez, 347 F.3d at 1211-12, such request is
DENIED.

Under the McDonnell-Douglas framework, the employee bears the burden of establishing a prima facie case of discrimination.  To establish a prima facie case of race or national origin discrimination, the employee generally must show: (1) she belongs to a protected class; (2) she was qualified for her job; and (3) she suffered an adverse employment action that gives rise to an inference of discrimination.  Kendrick v. Penske Transp. Serv., Inc., 220 F.3d 1220, 1227 n.6 (10th Cir. 2000).  "The critical prima facie inquiry in all cases is whether the plaintiff has demonstrated that the adverse employment action occurred under circumstances which give rise to an inference of unlawful discrimination."  Id. at 1227.  "To be an adverse action, the employer's conduct must be 'materially adverse' to the employee's job status."  Meiners v. Univ. of Kan., 359 F.3d 1222, 1230 (10th Cir. 2004).  Furthermore, "the adverse action must amount to a significant change in the employment status, such as firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."  Id. (internal quotations omitted).

If the employee establishes a prima facie case of discrimination, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its actions.  Cross v. Home Depot, 390 F.3d 1283, 1286 (10th Cir. 2004).  "If such a showing is made, the burden then shifts back to the employee to demonstrate that the employer's proffered explanation was merely pretext for discrimination."  Id.

13

"An employee demonstrates pretext with evidence the employer's proffered reasons are so weak, implausible, or inconsistent a reasonable jury would not believe them." Pacheco v. Whiting Farms, Inc., 365 F.3d 1199, 1207 (10th Cir. 2004).

In this case, Plaintiff must proceed under the McDonnell-Douglas framework because she does not present any direct evidence of discrimination.[10] Plaintiff fails to carry her burden of establishing a prima facie case of race or national origin discrimination.  Plaintiff is in a protected class and, as her duty status report makes clear, she was qualified for the general clerk and distribution clerk positions.  Plaintiff fails, however, to present evidence showing she suffered an adverse employment action.

Plaintiff argues she suffered an adverse employment action when the Postal Service abolished the general clerk position and reassigned her to the distribution clerk position.[11]  Plaintiff, however, has not presented any evidence demonstrating

_____

[10] Plaintiff argues direct evidence of race and national origin discrimination exits because Plaintiff's co-worker, James Herrera, observed her supervisors mocking her manner of speech.  The mockery of Plaintiff's speech – however unprofessional – does not constitute direct evidence of racial animus without some evidence (and none exists here) tying the mockery to Plaintiff's race or national origin.  Furthermore, Herrera simply testified he had "a feeling" Plaintiff's race may have been a factor in her problems with management.

[11] Plaintiff also argues her termination constituted an adverse employment action; however, as explained above, see supra n.5, Plaintiff's complaint only alleges discriminatory discharge and discriminatory reassignment claims.  The

(continued...)

her duties as a distribution clerk were significantly different from those of a general clerk.  Plaintiff generally testified her job as a distribution clerk was more physically demanding and that her schedule changed, but no evidence exists showing the change constituted a *significant change* in her employment status. As a result, the court finds Plaintiff's reassignment to a distribution clerk position had a *de minimis* effect on her employment status.  See Hillig v. Rumsfeld, 381 F.3d 1028, 1033 (10th Cir. 2004).  Plaintiff's schedule change and the increased physical labor associated with her transfer were mere inconvenient alterations of her job responsibilities and therefore not "adverse."  See Tran v. Trustees of the State Colleges in Colo., 355 F.3d 1263, 1267 (10th Cir. 2004).

Even *assuming* Plaintiff established a prima facie case of race or national origin discrimination, the Postal Service proffered a legitimate, non-discriminatory reason for abolishing the general clerk position and reassigning Plaintiff to the distribution clerk position.  Specifically, the Postal Service reassigned Plaintiff as part of an internal restructuring of job duties resulting from new technology.  Plaintiff has not argued nor produced *any* evidence showing the Postal Service's proffered reason for reassignment was a pretext for unlawful race

---

[11](...continued)
court dismissed Plaintiff's discriminatory discharge claim for lack of jurisdiction. Plaintiff, as a result, cannot rely upon her termination to argue she suffered an adverse employment action when the Postal Service reassigned her to the distribution clerk position.

or national origin discrimination.  Simply no evidence exists showing the Postal Service's reason for reassigning Plaintiff is so weak, implausible, or inconsistent a reasonable jury would not believe the Postal Service's explanation.  As a result, Plaintiff fails to carry her burden of showing the Postal Service engaged in race or national origin discrimination in violation of Title VII.

C.

Count IV of Plaintiff's complaint alleges the Postal Service unlawfully retaliated against her after she filed her June 2000 EEO complaint.  Section 704(a) of Title VII provides that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because [the employee] made a charge . . . under [Title VII]."  42 U.S.C. § 2000e-3(a).  Title VII retaliation claims are also analyzed under the McDonnell-Douglas framework. Tran, 355 F.3d at 1266.

To establish a prima facie case of retaliation, the employee must show that: (1) she engaged in protected activity; (2) the employer took an adverse employment action against her; and (3) a causal connection exists between the protected activity and adverse action.  Cross, 390 F.3d at 1285-86.  If the employee establishes a prima facie case of retaliation, the burden shifts to the employer to articulate a legitimate, non-retaliatory reason for the adverse employment action.  Tran, 355 F.3d at 1266.  If the employer proffers a non-

16

retaliatory reason for its action, the employee must demonstrate the employer's reasons were a pretext for unlawful retaliation.  Id.

In this case, Plaintiff fails to carry her burden of proving a prima facie case of retaliation.  Plaintiff engaged in protected activity when she filed the June 2000 EEO complaint.  Plaintiff, however, cannot establish she suffered an adverse employment action for the reasons described above.  Moreover, even *assuming* Plaintiff could establish a prima facie case of retaliation, she fails to offer *any* evidence demonstrating the Postal Service's reason for reassigning her was a pretext for unlawful retaliation.  Therefore, Plaintiff fails to demonstrate the Postal Service retaliated against her in violation of Title VII.

IV.

For the forgoing reasons, Defendant's motion to dismiss (Doc. No. 26), motion for summary judgment (Doc. No. 32), and motion to file a reply brief out of time (Doc. No. 45) are GRANTED.

Entered for the Court
this 11th day of February 2005


Bobby R. Baldock
United States Circuit Judge
Sitting by Designation

17